UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
EDMUND BRYAN,                          :

        Plaintiff,                   :  No. 07 Civ. 7300 (SHS)

   -against-                          :  ECF CASE

MEMORIAL SLOAN-KETTERING CANCER        :  **AFFIDAVIT OF**
CENTER,                                   **PAMELA DUDLEY**

        Defendant.                   :
------------------------------------- X

STATE OF NEW YORK    )
                     ) ss.
NEW YORK COUNTY      )

    PAMELA DUDLEY, being duly sworn, deposes and says:

    1.    On November 24, 1986, I was hired by Memorial Sloan-Kettering Cancer Center (the "Center"). Since then, I have held various positions with the Center and I currently hold the position of Employee Relations Specialist in the Employee Affairs Department ("Employee Affairs").

    2.    I am fully familiar with the facts and circumstances set forth herein and make this affidavit in support of the Center's Motion for Summary Judgment seeking dismissal of the Amended Complaint filed by plaintiff Edmund Bryan ("Mr. Bryan")

    3.    In my capacity as an Employee Relations Specialist, my duties include, but are not limited to, advising Center managers and staff on employee relations matters including employee performance issues, reductions-in-force and other personnel actions affecting employees. I am also involved in conducting investigations regarding complaints of discrimination. Further, I serve as liaison with legal counsel to respond to legal actions and assist the Center in defending lawsuits brought by current or former Center employees.

4. The Center is a not-for-profit institution devoted to patient care, education and research in cancer. The Center has pioneered and established the most advanced standards of care in cancer treatment and is committed to treating patients with cancer and conducting research to develop a potential cure for cancer. Patients of the Center receive outstanding care, and the Center prides itself on the compassion and dedication of its doctors, nurses and other healthcare and administrative staff.

5. In addition to its commitment to it patients, the Center is extremely committed to the success and development of its more than 9,000 employees and, in connection therewith, has instituted numerous initiatives and programs to improve the quality of their work and professional lives. For example, the Center maintains an extensive Training and Development Department that offers classes to enhance employees' professional development free of charge, and a tuition reimbursement program for those employees who wish to go outside the Center to further develop their job skills.

6. The Center also maintains a Work/Life Department to help employees enhance their life skills by offering various Work/Life Seminars (*e.g.*, "How to Hire a Nanny" and "How to Navigate the New York City School System") and contracting with LifeCare, an outside vendor, to provide comprehensive referral sources to employees regarding their child care, parenting, education, college planning, financial management and other types of life skills.

7. The Center maintains generous benefits programs for its employees. For example, the Center maintains an Employee Assistance Program that provides counselors to confidentially assist employees with personal issues that may arise (*e.g.*, stress, depression). Additionally, the Center maintains workers' compensation insurance, a short term disability plan

and a long term disability plan, all of which provide a measure of protection and income during any period of a covered medical leave.

8. The Center holds its employees to high standards of professionalism and is committed to ensuring that none of its employees are subject to unlawful discrimination. To this end, the Center maintains a written Equal Employment Opportunity ("EEO") Policy. (A true and correct copy of the EEO Policy is attached hereto as Exhibit A.)

9. In addition, the Center's Anti-Harassment Policy specifically prohibits retaliation against individuals who make complaints of discrimination or harassment, stating that, "the Center prohibits retaliation against any individual who reports harassment or participates in an investigation of such reports." (A true and correct copy of the Center's Anti-Harassment Policy is attached hereto as Exhibit B)(the EEO Policy and the Anti-Harassment Policy are collectively referred to herein as the "Policies").

10. The Center's commitment to the Policies is exhibited by its efforts to make the Policies known to its employees by posting EEO notices on appropriate bulletin boards and by providing employees with copies of the Employee Handbook, which also sets forth the Center's Policies. The Center's commitment to the Policies is further demonstrated by its practice of utilizing Employee Affairs, which is a part of Human Resources, to address complaints of discrimination, retaliation or harassment and to monitor employment decisions. In approximately July 2007, Human Resources underwent a re-organization during which the name "Employee Relations" was changed to "Employee Affairs."

11. In connection with this lawsuit, I reviewed personnel data for Central Processing Department ("CPD") employees, including Mr. Bryan. On May 8, 1989, the Center hired Mr.

Bryan as a CPD technician, which position he remains in to date. Personnel records indicate that Mr. Bryan has received wage increases every year of his employment.

12. The CPD is responsible for the sterilization of all the reusable surgical instruments and equipment of the Center and its hospitals and clinics. John Meggs, the former Manager of the CPD, was the decision-maker with respect to employment actions (*e.g.*, hiring, promotion and termination) in the CPD. In January 2008, Mr. Meggs' employment with the Center was terminated.

13. The CPD employs many employees from diverse racial and ethnic backgrounds. For example, the majority of CPD employees are of Caribbean, African and Central American descent. Currently, there are nine Jamaican individuals employed in the CPD (including Mr. Bryan), three of whom were promoted to the position of Equipment Specialist by Mr. Meggs.

14. Job vacancies are either filled through the Center's formal job posting and interview process or pursuant to the practice of department managers moving incumbent employees into vacant positions. Such practice is consistent with the Center's written Job Posting Policy, which policy provides that *generally* open position will be posted. (A true and correct copy of the Job Posting Policy is attached hereto as Exhibit C.) The word "generally" is used to allow department managers the flexibility to promote incumbent employees into positions when they determine an incumbent is qualified and ready for the promotion. Pursuant to this practice, on September 14, 2006, Mr. Meggs promoted Kevin Walrond into a vacant Equipment Specialist position on the night shift.

15. In or around April 2006, the Center had an opening for the position of Lead Technician on the night shift. To solicit applicants, the Center listed the position on its job postings bulletin and verbally announced the vacancy to all shifts of the CPD, including the night

shift that Mr. Bryan worked. (A true and correct copy of the job posting for this position is attached hereto as Exhibit D.) The Center has no record of Mr. Bryan applying for the Lead Technician position. (A true and correct copy of Human Resources' list of applicants is attached hereto as Exhibit E.) Mr. Meggs interviewed and selected Miguel Ruiz, who was an outside candidate, to fill this position. Mr. Ruiz began his employment on July 24, 2006.

16. Human Resources has received reports from at least five of Mr. Bryan's co-workers expressing fear for their safety in continuing to work with Mr. Bryan. Given the seriousness of the complaints, Human Resources immediately launched an investigation of this matter by interviewing the employees who had voiced their concerns. (A true and correct copy of Human Resources' investigation summary is attached hereto as Exhibit F.) Specifically, these individuals reported that Mr. Bryan isolates himself from the rest of the staff and speaks extremely negatively about everything (*e.g.*, his lawsuits, the Center and the United States). They further reported that Mr. Bryan has created an uncomfortable work environment, but that they are scared to confront him and fear that his bizarre behavior might lead to violence in the workplace.

_____
Pamela Dudley

Sworn to before me this
28 day of May 2008

_____
Notary Public

JONATHAN A. HYMAN
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 3/22/20_11_

NYK 1161037-1.034164.0066