# Memorandum – Part 2

## ARGUMENT

### II. STANDARD FOR SUMMARY JUDGMENT.

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Disputes over irrelevant facts may not obscure the absence of a material dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). As Plaintiff can offer no evidence to create an issue of material fact in support of his claims that the Center discriminated and retaliated against him and subjected him to a hostile work environment based on his perceived sexual orientation and national origin, the Court must dismiss Plaintiff's Amended Complaint in its entirety.

### III. PLAINTIFF'S CLAIMS ARE BARRED BY *RES JUDICATA* AND/OR *COLLATERAL ESTOPPEL*.

To the extent Mr. Bryan attempts to assert claims premised upon discriminatory, retaliatory and/or harassing conduct that occurred prior to the July 25, 2006 decision of the ALJ, such claims are barred by the doctrines of *res judicata* and/or *collateral estoppel*. "Res judicata assures the finality of judgments by precluding a party to a lawsuit from litigating a claim more than once." Taylor v. MCI, Int'l, 215 F. Supp. 2d 347, 352 (S.D.N.Y. 2002)(citations omitted). The doctrine takes effect when: (i) there exists an adjudication on the merits in a prior law suit; (ii) the prior lawsuit involved the party to be precluded or a party in privity with that party; and (iii) the claims sought to be precluded were raised, or might reasonably have been raised in a prior lawsuit. Id. at 353.

All three of these requirements are met in the instant case. The decision by the New York State Supreme Court upholding the ALJ's and the City Commission's dismissal of Mr. Bryan's discrimination, harassment and retaliation claims constitutes a final adjudication on the merits. (Kale Aff. ¶¶3-4, Exs. A-C.) Additionally, the parties -- Mr. Bryan and the Center -- are the same here as in the prior proceedings and Mr. Bryan raised, or had the opportunity to raise, any and all allegations prior to the ALJ's decision. Similarly, Mr. Bryan is *collaterally estopped* from re-litigating the factual determinations of the ALJ to the extent he purports to raise the same issues in this action. See Janneh v. Regal Entm't Group, No. 07 Civ. 79, 2007 U.S. Dist. LEXIS 57297, at *9-10 (N.D.N.Y. Aug. 4, 2007)(collecting cases).

Accordingly, Mr. Bryan cannot maintain a cause of action with respect to alleged conduct that occurred prior to the July 25, 2006 decision of the ALJ, or that purports to re-litigate the factual determinations set forth therein.

## IV. PLAINTIFF FAILS TO ESTABLISH A CLAIM OF DISCRIMINATION.

Mr. Bryan's perceived sexual orientation and national origin discrimination claims are based on the Center's failure to promote him to the Equipment Specialist position on two occasions since the ALJ's July 25, 2006 decision. Specifically, Mr. Bryan alleges that he should have been promoted to: (i) the Equipment Specialist position that was given to Kevin Walrond in September 2006; and (ii) the Equipment Specialist position that was closed without being filled in or around October 2007.[7]

---

[7] At his deposition, Mr. Bryan also identified his failure to be promoted to the Lead Technician position that became available in April 2006 and was filled by Miguel Ruiz in July 2006. Notably, however, because the Center hired Mr. Ruiz to the Lead Technician position *before* the July 25, 2006 decision of the ALJ, any claims that Mr. Bryan seeks to maintain with respect to this position are *res judicata*. See Taylor, 215 F. Supp. 2d at 352-53 (explaining claims raised, or that might reasonably have been raised, in a prior lawsuit are precluded in subsequent (continued...)

To succeed on a claim for failure to promote, Mr. Bryan must establish that: (i) he was a member of a protected class; (ii) he applied for a position for which he was qualified; (iii) he suffered an adverse employment action by not being promoted; and (iv) there were circumstances giving rise to an inference of discrimination. See Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). The burden then shifts to the Center to produce a legitimate, non-discriminatory reason for its actions. Id. However, the final burden rests on Mr. Bryan to prove that the Center's proffered explanation is merely a pretext for its intentional discrimination. Id. For the reasons discussed below, Mr. Bryan cannot establish a claim of discrimination with respect to either Equipment Specialist position.

    A.    <u>Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination.</u>

        1.    <u>Plaintiff Is Not A Member Of A Protected Class.</u>

As an initial matter, Mr. Bryan cannot establish a *prima facie* case of discriminatory failure to promote based on his perceived sexual orientation because he cannot show that he is a member of a protected class. In this regard, Mr. Bryan steadfastly maintains that he is *not* homosexual and there is absolutely no evidence to suggest that anyone at the Center actually perceives Mr. Bryan to be homosexual, which fact Mr. Bryan himself does not dispute. (Pl. Dep. 50-53.) To the contrary, the July 25, 2006 decision of the ALJ firmly established that Mr. Bryan is not homosexual and that no one at the Center perceives him to be homosexual. (Pl. Dep. 51-52; Kale Aff., Ex. A pp. 2, 8.) Thus, the factual determination of the ALJ that no one at the Center actually believed Mr. Bryan to be homosexual precludes his membership in this protected class and prevents him from establishing a perceived sexual orientation claim in any regard. (See discussion *supra* at 10-11.) Accordingly, Mr. Bryan cannot maintain a failure to promote

---

lawsuit). Moreover, as noted above, the Center has no record of Mr. Bryan applying for this position. (Dudley Aff. ¶15, Ex. E.)

claim based on his perceived sexual orientation and the Center is entitled to summary judgment on this claim.

### 2. Plaintiff Was Not Qualified To Be An Equipment Specialist.

Mr. Bryan cannot establish a *prima facie* case of failure to promote because he cannot show that he was qualified to be an Equipment Specialist. As noted above, an Equipment Specialist is required to have excellent communication and interpersonal skills as the position requires significant interaction with other employees and departments throughout the Center. (Donoghue Dep. 79-80.) While the Center does not dispute that Mr. Bryan may possess the requisite technical skills for the position, the position requires more than mere technical skills. (Id.) As determined by the ALJ, the overwhelming evidence establishes that Mr. Bryan clearly lacks even the most basic communication and interpersonal skills required for a supervisory position. (Kale Aff., Ex. A p. 8.) Indeed, Mr. Bryan's gross deficiencies in these key areas have been documented *ad nauseam* in his performance evaluations for years. (Pl. Dep. 13-14, 18, 22-23, 25, Exs. 1-7.)

Additionally, Mr. Ruiz testified that Mr. Bryan: (i) refuses to interact with co-workers; (ii) does not respond when spoken to; (iii) is moody and has an attitude; (iv) is feared by his co-workers; (v) regularly (on a weekly basis) slams trays containing delicate surgical instruments on a table; and (vi) on one occasion, intentionally slammed a metal basin on the floor in an effort to intimidate his co-workers. (Ruiz Dep. 50-58.) Significantly, Mr. Bryan's own psychiatrist testified that during the period that he has been treating Mr. Bryan there have been times when Mr. Bryan was not "emotionally disposed" to supervising other people. (Murphy Dep. 25-26.) Remarkably, at his recent deposition, Mr. Bryan repeated his bizarre belief that the Center uses

another hospital's ambulances to stalk him.[8] (Pl. Dep. 98-100; Kale Aff., Ex. A pp. 4, 8.) Accordingly, it simply cannot be said that Mr. Bryan was or is qualified for a supervisory position.

### 3. Plaintiff Cannot Establish An Inference Of Discrimination.

Plaintiff cannot establish a *prima facie* case of discrimination for the additional reason that there is simply no evidence that the Center's failure to promote him occurred under circumstances that give rise to an inference of perceived sexual orientation or national origin discrimination. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Indeed, Mr. Bryan fails to identify a single similarly-situated employee outside of his protected classes -- here, (perceived) homosexual and Jamaican -- whom he alleges received more favorable treatment. See Goldman v. Admin. for Children's Servs., No. 04 Civ. 7890 (GEL), 2007 U.S. Dist. LEXIS 39102, at *13 (S.D.N.Y. May 28, 2007)(granting summary judgment to defendant where plaintiff failed to provide any evidence of differential treatment to similarly-situated employees outside of protected class). Further, Mr. Bryan makes no allegations of discriminatory comments or conduct against Mr. Meggs -- the decision-maker with respect to departmental promotions -- who, as noted above, promoted at least three Jamaican employees to the position of Equipment Specialist during his employment. (Dudley Aff. ¶13.) See McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997)(affirming grant of summary judgment to defendant where there was insufficient evidence imputing an invidious motive to the decision-maker responsible for firing plaintiff).

---

[8] Mr. Bryan's interpersonal issues extend beyond a lack of communication skills and his ability to exist with his co-workers. The records from Mr. Bryan's treating psychiatrist indicate Mr. Bryan believes that people who bump him on the street and subway are sent by the Center. (Pl. Dep., Ex. 8; Murphy Dep. 9, 19.) In describing Mr. Bryan, his psychiatrist consistently referred to him as being "paranoid." (Murphy Dep. 9, 15.)

Additionally, Mr. Bryan testified that his poor working relationship with Mr. Gillette is due to the fact that Mr. Gillette has a "negative perception" of him, without so much as even alleging that this so-called "negative perception" is in any way based on his perceived sexual orientation or Jamaican national origin. (Pl. Dep. 40.) The anti-discrimination laws are not intended to serve as a general civility code and personal animosity is simply not prohibited by these laws. See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 309-310, 786 N.Y.S.2d 382, 394 (2004) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84 (1998)). Accordingly, Mr. Bryan cannot establish a *prima facie* case of discriminatory failure to promote and the Center is entitled to summary judgment as a matter of law.

B.   The Center Has Articulated Legitimate Non-Discriminatory Reasons For Its Failure To Promote.

The Center has proffered legitimate, non-discriminatory reasons for failing to promote Mr. Bryan. It is well-settled that a failure to rectify his interpersonal skills is a legitimate reason to deny a promotion opportunity. See Mody v. GE, No. 04 Civ. 358 (JCH), 2006 U.S. Dist. LEXIS 8611, at *23 (D. Conn. Feb. 21, 2006)(finding legitimate, non-discriminatory reason for employer's failure to promote employee where supervisors expressed concern about employee's "interpersonal and managerial skills"); Ancekewicz v. Long Island Univ., No. 02 Civ. 4490 (DRH)(ARL), 2005 U.S. Dist. LEXIS 11662, at *21 (E.D.N.Y. June 15, 2005)(finding legitimate, non-discriminatory reason for adverse employment action because plaintiff was "chronically incapable of getting along with others . . ."). Indeed, the ALJ found overwhelming evidence that the reason Mr. Bryan had failed to advance at the Center was because he lacks basic interpersonal skills. (Kale Aff., Ex. A pp. 2, 8.)

Mr. Bryan's bizarre behavior and his lack of interpersonal skills have recently escalated to a frightening -- and wholly unacceptable -- level. In this regard, the Center has received

reports from at least five of his co-workers expressing fear for their safety in continuing to work with Mr. Bryan. (Ruiz Dep. 55-58; Dudley Aff. ¶16, Ex. F.) Specifically, these individuals reported to CPD management and to Human Resources that Mr. Bryan isolates himself from the rest of the staff and speaks extremely negatively about everything (*e.g.*, his lawsuits, the Center and the United States). (Id.) More significantly, they reported that they fear that Mr. Bryan's bizarre behavior might lead to violence in the workplace. (Id.) In light of the foregoing, the Center is certainly justified (if not obligated) in denying Mr. Bryan a promotion to a supervisory position. See Harrison v. North Shore Univ. Hosp., No. 04 Civ. 2033 (WDW), 2008 U.S. Dist. LEXIS 17330, at *26-27 (E.D.N.Y. Mar. 6, 2008)(finding threatening behavior, disruptive conduct and inability to get along with others are legitimate non-discriminatory reasons for adverse employment action).

In sum, the reports of Mr. Bryan's supervisors and co-workers, as well as the factual determinations of the ALJ, convincingly demonstrate that the Center has satisfied its burden of proffering legitimate business reasons for not promoting Mr. Bryan.

C.   Plaintiff Cannot Show Pretext.

Given that the Center has articulated legitimate business reasons for not promoting Mr. Bryan, he bears the burden of showing that the Center's proffered explanation is merely a pretext for discrimination. Mr. Bryan has not even attempted -- because he cannot -- to demonstrate pretext. In this regard, Mr. Bryan points to absolutely no evidence of disparate treatment based on his perceived sexual orientation or national origin. As discussed *supra* at 14-15, Mr. Bryan does not point to a single fact that suggests that the decision-maker, Mr. Meggs, was motivated by discriminatory animus. Rather, Mr. Bryan's allegations that the Center's actions were prompted by discriminatory animus rest entirely on sheer surmise and speculation, which are insufficient to support a claim of discrimination. See Valentine v. Standard & Poor's, 50 F.

- 16 -

Supp. 2d 262, 285 (S.D.N.Y. 1999), aff'd, 205 F.3d 1327 (2d Cir. 2000)(explaining that complainant's beliefs and conclusory allegations do not support showing of discrimination). Pikoris v. Mount Sinai Med. Ctr., No. 96 Civ. 1403 (JFK), 2000 U.S. Dist. LEXIS 7350, at *49-50 (S.D.N.Y. May 30, 2000)(same). Lacking any evidence of discrimination, the Court must dismiss the perceived sexual orientation and national origin failure to promote claims.

## V. PLAINTIFF'S RETALIATION CLAIM ALSO FAILS.

Mr. Bryan's retaliation claim should also be dismissed as a matter of law. Mr. Bryan claims that the Center has retaliated against him by: (i) refusing to promote him; (ii) providing him with negative performance evaluations; and (iii) verbally reprimanding him.[9] (Pl. Dep. 55-56, 59.) Like his discrimination claims, Mr. Bryan's retaliation claim is also analyzed pursuant to the burden-shifting test of McDonnell-Douglas. To establish a *prima facie* case of retaliation, Mr. Bryan must show that: (i) he partook in a protected activity known to the Center; (ii) he suffered a materially adverse action; and (iii) that there exists a causal connection between the protected activity and the materially adverse action. See Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006)(restating standard for harm required for retaliation claim). If Plaintiff establishes a *prima facie* case, the burden shifts to the Center to produce a legitimate, non-retaliatory reason for its action. Pace v. Paris Maint. Co., 107 F. Supp. 2d 251, 264, 266 (S.D.N.Y. 2000), aff'd, 7 Fed. Appx. 94 (2d Cir. 2001). However, the final burden rests

---

[9] At his deposition, Mr. Bryan also testified that he has been retaliated against by having his name removed from department charts and schedules and being assigned to cover another employee's shift over the weekend. (Pl. Dep. 61-63.) Defendant denies these allegations and, moreover, notes that Mr. Bryan testified that the reason for these alleged actions was because he refused to sign his performance evaluation, which refusal does not constitute engaging in statutorily protected activity. (Pl. Dep. 61-64.) See Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000). Further, as discussed *supra* at 10-11, Mr. Bryan also testified about numerous instances of alleged conduct that occurred prior to the July 25, 2006 ALJ decision, which alleged conduct cannot support a viable retaliation claim in this case. See Taylor, 215 F. Supp. 2d at 353.

on Mr. Bryan to prove that the Center's proffered explanation is merely a pretext for retaliation. Id. As demonstrated below, Plaintiff's efforts to demonstrate retaliation fail as a matter of law.

Mr. Bryan cannot establish a *prima facie* case of retaliation with respect to his allegations concerning unfavorable performance reviews and verbal reprimand as such actions do not rise to the level of being materially adverse actions as a matter of law. See, e.g., Harrison, 2008 U.S. Dist. LEXIS 17330, at *31-32 (finding reprimands that are not accompanied by a material change in plaintiff's working condition do not constitute an adverse action); Jackson v. City Univ. of N.Y., No. 05 Civ. 8712 (JSR), 2006 U.S. Dist. LEXIS 43338, at *2-3 (S.D.N.Y. June 26, 2006)(granting summary judgment for employer, following White, on retaliation claim, including with respect to negative evaluations received, because no record of negative consequences). Here, the terms and conditions of Mr. Bryan's employment have not changed; in fact, to the contrary, Mr. Bryan has consistently received wage increases *every year* of his employment, which fact further belies any claim of retaliation. (Pl. Dep. 103; Dudley Aff. ¶11.)

Moreover, Mr. Bryan cannot establish a *prima facie* case of retaliation with respect to his failure to be promoted to either Equipment Specialist position because he cannot establish the requisite causal connection. In this regard, Mr. Walrond's promotion to the Equipment Specialist position in September 2006 occurred *before* Mr. Bryan's March 7, 2007 complaint to Employee Relations and *before* he filed the Charge with the EEOC on February 20, 2007. (Donoghue Dep., Ex. A; Kale Aff ¶4.) See Nicastro v. N.Y. City Dep't of Design & Constr., No. 04 Civ. 2134, 2005 U.S. App. LEXIS 4255, at *2-3 (2d Cir. Mar. 14, 2005)(affirming summary judgment for employer on retaliation claim where employee experienced adverse employment actions well before engaging in protected activity).

Additionally, Mr. Bryan cannot demonstrate the requisite causal connection with respect to the Equipment Specialist position that was closed without being filled in or around October 2007. (Pl. Dep. 9.) This is because, whether the Court considers the approximately five-month period between the date of Mr. Bryan's protected activity and the date of his application, or the longer eight-month period between the date of Mr. Bryan's protected activity and the date the position was closed, either period is routinely held to be too attenuated to establish the requisite causal connection. See Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990); see also Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)(finding three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation).[10]

Moreover, and as discussed above, the Center has articulated legitimate, non-retaliatory reasons for Mr. Bryan's failure to be promoted (*i.e.*, his lack of communication and interpersonal skills), which reasons have nothing to do with Mr. Bryan's complaints to Employee Relations or his filing the Charge. Mr. Bryan offers only improper speculation that he has been retaliated against, which speculation cannot support a retaliation claim. See Pikoris, 2000 U.S. Dist. LEXIS 7350, at *49; Ofudu v. Barr Labs., Inc., 98 F. Supp. 2d 510, 513-14 (S.D.N.Y. 2000). Indeed, Mr. Bryan has consistently been denied promotions for years, received critical performance evaluations for years and even has alleged that he has been ridiculed for years, all of which were allegations that Mr. Bryan first raised in his 2002 complaint before the City

---

[10] To the extent Mr. Bryan attempts to establish a retaliation claim based on his 2002 complaint to the City Commission, the complaint was filed *four years* before the adverse actions alleged here, which period is decidedly too long to establish the requisite causal connection. See Hollander, 895 F.2d at 85-86. Moreover, the ALJ's decision disposing of the 2002 complaint conclusively held that Mr. Bryan was *not* retaliated against, thus barring him from maintaining a retaliation claim in this regard. (See discussion *supra* at 10-11; Kale Aff., Ex. A pp. 2, 9.)

Commission and all of which are dealt with in the July 25, 2006 ALJ decision. (Pl. Dep. 13-14, 18, 21-25, 41, 45, 57, 66-67; Kale Aff., Ex. A.) Further, Mr. Bryan's own testimony that his treatment by Mr. Gillette has improved since he filed the Charge negates any suggestion of retaliation. (Pl. Dep. 31-32, 93-94, 104-105.) Accordingly, this Court should find that Mr. Bryan's retaliation claim should be dismissed.

## VI. PLAINTIFF WAS NOT SUBJECT TO A HOSTILE WORK ENVIRONMENT.

Mr. Bryan's perceived sexual orientation and national origin hostile work environment claims also fail as a matter of law. To establish a claim of hostile work environment, Mr. Bryan must produce evidence that: (i) the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of his work environment; and (ii) a specific basis for imputing that conduct to the employer. See Harris v. Forklift Sys., 510 U.S. 17, 21 (1993); Bailey v. Frederick Goldman, Inc., No. 02 Civ. 2429 (JPG), 2006 U.S. Dist. LEXIS 12453, at *11 (S.D.N.Y. Mar. 22, 2006). The "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)(quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). For the reasons set forth below, Mr. Bryan's allegations are legally insufficient to establish a hostile work environment.

### A. Plaintiff's Fails To Allege New Allegations.

As an initial matter, the Center is entitled to summary judgment on Mr. Bryan's hostile work environment claims to the extent he fails to allege any new comments or conduct other than that which have already been found to be legally insufficient by the ALJ, which findings were subsequently adopted by the City Commission and upheld by the New York State Supreme Court. (Kale Aff., Exs. A-C.) Specifically, with respect to his perceived sexual orientation hostile work environment claim, Mr. Bryan repeats the *exact same comment* he raised in the

prior proceedings (which was not persuasive to the ALJ, the City Commission and the New York State Supreme Court, and should not be persuasive here) that his co-workers said that men who live at home with their mothers are feminine. (Pl. Dep. 38-43, 52; Donoghue Dep., Ex. A; Kale Aff., Ex. A p. 4.) It is well-settled that prior litigation by the same parties on a different cause of action has a preclusive effect as to those issues litigated and determined in the prior action. See Janneh, 2007 U.S. Dist. LEXIS 57297, at *9-10; Taylor, 215 F. Supp. 2d at 352-53. Accordingly, Mr. Bryan's hostile work environment claim based on his perceived sexual orientation must fail.

B.   The Complained-Of-Conduct Is Not Severe Or Pervasive.

Even to the extent the Court were to consider Mr. Bryan's allegation concerning perceived sexual orientation harassment anew, a one-time, facially innocuous comment such as that alleged here -- that men who live at home with their mothers are feminine -- falls far short of the type of egregious and offensive conduct needed to establish a hostile work environment. See Ponniah Das v. Our Lady of Mercy Med. Ctr., No. 00 Civ. 2574 (JSM), 2002 U.S. Dist. LEXIS 7771, at *22 (S.D.N.Y. Apr. 29, 2002), aff'd, 2003 U.S. App. LEXIS 1213 (2d Cir. Jan. 23, 2003)(finding comments unrelated to protected category fail to support discrimination claim); see also Gregg v. New York State Dep't of Taxation & Fin., No. 97 Civ. 1408 (MBM), 1999 U.S. Dist. LEXIS 5415, at *35 (S.D.N.Y. Apr. 15, 1999)(finding that simple teasing, offhand comments and isolated incidents are not enough to establish a hostile work environment).[11]

Similarly, the alleged comments Mr. Bryan identifies in support of his national origin hostile work environment claim fall far short of this Circuit's high standard for establishing such

---

[11] Moreover, the Center's investigation into Mr. Bryan's complaints revealed that the employees were joking with CPD employee Kevin Walrond -- not Mr. Bryan -- about fact that *Mr. Walrond* lives at home and does not pay rent. (Donoghue Dep., Ex. A.)

claim. Specifically, Mr. Bryan alleges three incidents of national origin harassment: (i) a conversation Mr. Bryan overheard between co-workers Lennox Ewrse, a Jamaican Building Services employee, and Efrain Perez, a Puerto Rican CPD employee, in which Mr. Perez greeted Mr. Ewrse while speaking in a Jamaican accent; (ii) a comment allegedly made by co-worker Jemel Robinson that the reason Jamaicans are so crazy is because they eat spicy food; and (iii) a comment allegedly made by Kevin O'Connor, an outside vendor who is not employed by the Center and who has no supervisory authority over Mr. Bryan, to the effect that Jamaicans should be given a shovel and left on top of a snow covered mountain.[12] (Pl. Dep. 43, 53-54, 109-112; Donoghue Dep. 26-27, 60, Ex. A; Gillette Dep. 86-87.)

Concerning Mr. Perez's mimicking a Jamaican accent, such conduct -- which is not even alleged to be directed at Mr. Bryan -- does not rise to the level of creating a hostile work environment. (Pl. Dep. 70-71; Gillette Dep. 86-87; Donoghue Dep. 26-27, Ex. A; Dudley Aff., Ex. F.) See Almonord v. Kingsbrook Jewish Med. Ctr., No. 04 Civ. 4071 (NGG)(RML), 2007 U.S. Dist. LEXIS 58529, at *26-27 n.7 (E.D.N.Y. Aug. 10, 2007)(finding allegations of supervisor mimicking Haitian plaintiff's pronunciation do not establish hostile work environment); Holt v. Roadway Package Sys, 506 F. Supp. 2d 194, 204 (W.D.N.Y. 2007)(stating that, "negative opinions expressed by [plaintiff's] co-workers which concerned Jamaica's political and economic status, and the themes contained in Reggae music [] are isolated statements, and are manifestly not severe, pervasive, threatening or humiliating enough to have given rise to a hostile work environment.").

---

[12] Notably, Mr. Bryan never reported Mr. Robinson's alleged statement, which statement was mentioned for the first time at Plaintiff's deposition on April 21, 2008. (Pl. Dep. 53.) Further, Employee Relations' March 2007 investigation was unable to find *any evidence* to corroborate the alleged statement by Mr. O'Connor. (Donoghue Dep. 42-43, Ex. A.)

Moreover, the Center immediately investigated this incident and the very next night Mr. Gillette held a staff meeting to inform the staff that they were prohibited from speaking with an accent that was not of their native origin. (Donoghue Dep. 56-57; Gillette Dep. 57-58, 66.) In addition, Mr. Perez was counseled on the need to respect and understand cultural diversity and the incident was noted on his year-end performance evaluation. (Dudley Aff., Ex. F.) Thus, the Center's prompt and thorough response relieves it of any potential liability concerning this incident. See Perry, 115 F.3d at 153. Mr. Bryan also cannot establish that the alleged statements of Mr. Robinson and Mr. O'Connor -- of which there is absolutely no corroborating evidence -- are sufficiently severe or pervasive enough to establish a hostile work environment. See Almonord, 2007 U.S. Dist. LEXIS 58529, at *26-27 n.7; Holt 506 F. Supp. 2d at 204. Nor does Mr. Bryan so much as allege that any of these alleged incidents in any way interfered with the performance of his duties. See Holt, 506 F. Supp. 2d at 203-204.

Moreover, Mr. Bryan undermines his own allegations of a hostile work environment by his repeated testimony that his relationships with his fellow employees, particularly Mr. Gillette, have *improved* since he filed the Charge. (Pl. Dep. 31-32, 93-94, 104-105.) Specifically, at his deposition Mr. Bryan testified that since he received his right to sue letter from the EEOC Mr. Gillette's "conduct became modified . . . his behavior came down and he started speaking to me more respectfully, the same way he would speak to [] the people he likes." (Pl. Dep. 104-105.) Thus, taken in their entirety, Mr. Bryan's allegations do not satisfy the required element of being objectively and subjectively severe and pervasive offensive conduct. See Augustin v. Yale Club, No. 06 Civ. 5078, 2008 U.S. App. LEXIS 8775, at *3 (2d Cir. Apr. 23, 2008)(holding "episodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights, which, however regrettable, do not constitute a hostile work environment even if taken as true.").

Accordingly, based on Plaintiff's own testimony, his hostile work environment claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion for Summary Judgment and enter an appropriate order dismissing Plaintiff's Amended Complaint in full. In addition, Defendant requests that this Court award Defendant its costs and expenses, including reasonable attorneys' fees.

Dated: New York, New York
       May 30, 2008

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: _____
Joel E. Cohen (JC 5312)
Katherine D. Kale (KK 7586)
340 Madison Avenue
New York, New York 10173
(212) 547-5400

Attorneys for Defendant
Memorial Sloan-Kettering Cancer Center

NYK 1159981-2.034164.0066

- 24 -