# Unreported Case – Bailey

ALETHIA BAILEY, Plaintiff, - against - FREDERICK GOLDMAN, INC., Defendant.

02 Civ. 2429 (TPG)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 12453

March 22, 2006, Decided

March 23, 2006, Filed

**PRIOR HISTORY: Bailey v. Frederick Goldman, Inc., 2003 U.S. Dist. LEXIS 16894 (S.D.N.Y., Sept. 24, 2003)**

**COUNSEL:** {*1} For Alethia Bailey, Plaintiff: Pamela Denise Hayes, Law Office of Pamela D. Hayes, New York, NY US.

For Frederick Goldman, Inc., Defendant: Felice B. Ekelman, Joanne Seltzer, Joanne Seltzer, Jackson Lewis, LLP, New York, NY.

**JUDGES:** THOMAS P. GRIESA, U.S.D.J.

**OPINION BY:** THOMAS P. GRIESA

**OPINION:** Plaintiff is a former employee of defendant Frederick Goldman, Inc. In this action, plaintiff has alleged that defendant discriminated against her on the basis of her race, age, and national origin in violation of **42 U.S.C. § 1981**, Title VII of the Civil Rights Act of 1964, **42 U.S.C. §§ 2000e et seq.,** and the Age Discrimination in Employment Act, **29 U.S.C. §§ 621 et seq.** In a previous opinion, this court granted defendant's motion to dismiss the **Section 1981** claims. Defendant now moves for summary judgment to dismiss the remaining claims. The motion is granted.

FACTS

Background

The following facts are taken from the parties' statements of facts, affidavits, and the exhibits accompanying their motion papers, including deposition transcripts.

Plaintiff Alethia Bailey was born in Jamaica in 1933. In 1985, defendant, {*2} a jewelry manufacturer with a national sales presence, hired Bailey as a National Accounts Clerk. As a National Accounts Clerk, plaintiff was responsible for overseeing certain of defendant's customer accounts to ensure that those customers were paying on time. Her duties included contacting customers about outstanding balances,

sending out invoices for monies due, and resolving claims for deductions from customer accounts.

Beginning in 1994, defendant began to observe a decline in the quality of plaintiff's performance. Before 1994, plaintiff was considered "very effective". In an August 1994 performance review, however, plaintiff's superior, Debra Einhorn, noted that there had been a change in plaintiff's work pattern over the previous six months. Although the numerical ratings in the evaluation were very good, the review targeted several areas in which plaintiff required improvement, such as following up with customers in a timely fashion regarding their deductions and immediately notifying superiors when problems arose. At the time, Ms. Einhorn described these issues as a "temporary setback" and remained confident that plaintiff would return to productivity. In performance reviews {*3} in 1995 and 1996, plaintiff again received high numerical marks regarding her performance, but the written portions of her evaluations indicated a continued need for improvement in customer follow-up and communication with superiors.

In 1997, defendant transferred plaintiff to the newly-created position of Invoice Collection Analyst. As explained in a note accompanying a performance evaluation that year, plaintiff's supervisors felt that the new position - which focused solely on collection of outstanding customer invoices and did not concern account deductions - would allow plaintiff to avoid some of the tasks on which she had been underperforming. In the wake of this transfer, plaintiff wrote her supervisor a letter in which she noted that a meeting between her and her superiors had caused her to "reflect" on her situation at Frederick Goldman. Plaintiff did not challenge the poor performance reviews she had received, instead admitting that she appeared to be the only person in her department who had not made any progress or growth within the company. The letter also described plaintiff's feeling that she had been "inundated" with work on her accounts, and claimed that her supervisors {*4} did not appreciate the difficulty of processing customer "chargebacks". Finally, plaintiff claimed to be

"baffled" at the change in her position, rhetorically questioning whether such a move was consistent with "the way equal opportunity employment functions".

Unfortunately, plaintiff's performance did not improve in the new position. Consequently, in May 1998, defendant presented plaintiff with a Performance Improvement Plan, or PIP, detailing areas in which plaintiff needed to improve. These areas included following procedures related to processing invoices, responding to customers, time management skills, and inter-departmental communication. In the May 1998 PIP, which plaintiff signed, a "target date" for completion of these improvements was set for one month later in June 1998.

When plaintiff's performance failed to improve, defendant presented her with a second PIP in July 1998. The July 1998 PIP detailed problems with communication with customers, communication with superiors, and repetitive lateness and leaving work early. Plaintiff refused to sign the July 1998 PIP.

Despite the two PIPs, plaintiff's performance continued to decline, as indicated in plaintiff's August 1998 {*5} performance evaluation, where she received very low marks. Other than noting some improvement in plaintiff's tardiness, the performance evaluation documented many problems with plaintiff's performance: continued problems with customer invoicing, outbursts at colleagues and superiors, communication problems, and failure to follow office procedures. Notably, the performance evaluation described a charge of nearly $ 90,000 that had to be written off of one of plaintiff's accounts due to many unresolved invoices that had accumulated prior to plaintiff's transfer in 1997.

At the end of the August 1998 performance evaluation, one of plaintiff's supervisors, Karina Lott, recommended that defendant terminate plaintiff's employment in 30 days unless "a vast improvement is demonstrated." Plaintiff refused to sign this evaluation.

Finally, on September 2, 1998, plaintiff was placed on an indefinite suspension, and was subsequently terminated by letter on September 10, 1998.

Procedural History

In June 1998, plaintiff filed an Initial Administrative Complaint with the City of New York Commission on Human Rights (the "Commission"), charging that she had been subjected to discrimination {*6} on the basis of her age (64) and her national origin (Jamaican). The Complaint also charged defendant with violations of **42 U.S.C. §§ 2000e** for the same conduct. In July 1998, plaintiff filed a Verified Amended Administrative Complaint, which was identical to the original complaint but added Karina Lott and Debra Einhorn, plaintiff's supervisors, as individual defendants.

At the end of July 1998, plaintiff filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). The Verified Amended Administrative Complaint, filed earlier that month with the Commission, was attached to plaintiff's EEOC complaint. In August 1999, plaintiff filed a Second Administrative Complaint with the Commission, alleging that defendant terminated her employment in retaliation for filing her original complaint with the Commission. This complaint was not filed with the EEOC and did not otherwise allege federal claims.

On May 31, 2001, the Commission issued two Determinations and Orders After Investigation, dismissing plaintiff's Initial and Second Administrative Complaints. On January 24, 2002, the EEOC adopted the Commission's findings and issued {*7} a Dismissal and Notice of Rights.

On March 28, 2002, plaintiff commenced this federal court action, alleging causes of action under **42 U.S.C. § 1981**, Title VII of the Civil Rights Act of 1964, **42 U.S.C. §§ 2000e** *et seq.,* and the Age Discrimination in Employment Act, **29 U.S.C. §§ 621** *et seq.* In an order dated September 24, 2003, this court granted defendant's Partial Motion to Dismiss and dismissed plaintiff's claims under **42 U.S.C. § 1981** and her race discrimination claim under Title VII. On April 14, 2005, defendant filed the instant motion seeking to obtain summary judgment on the remaining claims.

DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is thus entitled to judgment as a matter of law. **Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).** In opposing a summary judgment motion, the non-moving party must do more than merely assert that a factual dispute exists. Id. In a discrimination suit, "conclusory allegations of discrimination" {*8} will not suffice. **Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).**

Discrimination on the Basis of National Origin

Plaintiff asserts that defendant discriminated against her because of her Jamaican national origin. She also suggests in her papers that she was subjected to a hostile work environment because of her national origin. As discussed below, plaintiff cannot establish a *prima facie* case of discrimination on the basis of national origin.

Plaintiff's Title VII claim is analyzed under the familiar **McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)**, burden-shifting standard. Under McDonnell, the burden is on the plaintiff to put forth a *prima facie* showing of discrimination. See, e.g., **Ongsiako v. City of New York, 199 F. Supp. 2d 180, 188 (S.D.N.Y. 2002)**. If successful, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's discharge. Id. If defendant articulates such a reason, plaintiff must then demonstrate that defendant's claimed reason is untrue and is pretext for intentional, unlawful discrimination. Id.

To establish a *prima facie* case {\*9} of national origin discrimination, plaintiff must show that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination. **McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)**. Here, plaintiff clearly satisfies prongs one and three: she is Jamaican and was discharged from her job. Her claim fails, however, because she cannot establish that she was performing her duties satisfactorily. Defendant has offered a trail of performance reviews and improvement plans that document plaintiff's deteriorating performance. In evaluating employee performance under this prong, a court should look to an employer's legitimate expectations of performance, and may rely on legitimate supervisory evaluations to do so. See **Sitkiewicz v. Initial Servs. U.S.A., No. 96 Civ. 8543, 1999 U.S. Dist. LEXIS 14465, at \*15 (S.D.N.Y. Sept. 17, 1999)**. Plaintiff has not offered any evidence to rebut the evaluations or otherwise question their legitimacy. While she correctly notes that many of the {\*10} evaluations with negative comments also contain high numerical marks, she offers no rebuttal of the comments, which paint a consistent picture of an employee whose performance in key areas was growing steadily worse.

Even if plaintiff could demonstrate that she had been performing satisfactorily, she has not presented any evidence to support an inference that her discharge was related to national origin. To support this inference, plaintiff relies on comments allegedly made to her about problems understanding her speech because of her accent. Yet plaintiff admitted in deposition testimony that her supervisors made the same complaints about her written work as well. In any event, *at best,* plaintiff's allegations might qualify as isolated or stray comments which, without some demonstrable connection to plaintiff's discharge, are insufficient to give rise to an inference of

discrimination. See **Sitkiewicz, 1999 U.S. Dist. LEXIS 14465, at \*23**. n1

- - -Footnotes- - -1

n1 Of course, even if plaintiff were to establish a *prima facie* case of national origin discrimination, she has presented no evidence that could be read to undercut defendant's legitimate, non-discriminatory reasons for firing plaintiff (i.e., her poor job performance). Defendant has established through its performance reviews and reports that its satisfaction with plaintiff's performance was declining steadily over a period of years. Plaintiff has not offered any evidence to rebut this well-documented claim.

- - -End Footnotes- - -

{\*11} Finally, plaintiff appears to plead a claim of hostile work environment on the basis of national origin. This claim too must fail. To prevail on a hostile work environment claim, plaintiff must demonstrate that (1) her workplace was permeated with discriminatory information that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. **Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)**. Here, plaintiff has failed to allege any pattern of misconduct, much less a pattern of misconduct that "permeated" her workplace or was "severe or pervasive," and certainly not one that was so severe or pervasive as to alter the conditions of her employment.

Since plaintiff cannot establish a *prima facie* case of discrimination according to national origin or a hostile work environment claim due to national origin, those claims must be dismissed.

Discrimination on the basis of age

Plaintiff alleges that she was the victim of age discrimination. Claims under the Age Discrimination in Employment Act are examined under the same {\*12} burden-shifting framework applied to Title VII claims (and discussed above). See **Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)**.

As an initial matter, while plaintiff is within the protected age group and suffered an adverse employment action, she nonetheless cannot establish a *prima facie* case of age discrimination for the same reason she could not establish a *prima facie* case of discrimination on the basis of national origin: she

cannot demonstrate that she performed her duties satisfactorily.

Furthermore, even if plaintiff could prove that her performance was satisfactory, her *prima facie* case would fail because she cannot establish an inference that her discharge was related to age discrimination. Courts in this Circuit have recognized that any inference of age discrimination is undercut where, as here, a plaintiff is over 40 years old when she is hired. See, e.g., **Boyle v. McCann-Erickson, Inc., 949 F. Supp. 1095, 1104 (S.D.N.Y. 1997)**. Moreover, plaintiff has failed to offer any evidence that her firing was related to her age, and she admitted in a deposition that no employees ever made comments about her age. Her entire claim {*13} of age discrimination seems to rest on (a) a supervisor's comment that the company was "youth-oriented," and (b) the fact that during plaintiff's tenure, defendant hired and promoted workers younger than her. Neither of these bases is sufficient. As discussed, a stray or isolated comment does not give rise to an inference of discrimination. And while in some cases the promotion of younger workers may create an inference of age discrimination, plaintiff has failed to demonstrate that she was as qualified, if not more qualified, for these positions than those who were promoted. She also fails to allege that she was fired to make way for younger workers. n2

- - -Footnotes- - -2

n2 As with her claim of discrimination on the basis of national origin, even if plaintiff could establish a prima facie case of age discrimination, she has offered no evidence to rebut defendant's claims that it fired her due to poor work performance.

- - -End Footnotes- - -

Finally, plaintiff appears to plead a hostile work environment based upon her age. As with her claim of a hostile {*14} work environment based on national origin, plaintiff has failed to present evidence of conduct - much less a pattern of conduct - that would qualify as severe or pervasive enough to alter the conditions of her employment. Her claim would apparently rest on the a single comment that one of her supervisors allegedly made *to someone else.*

Since plaintiff cannot establish a *prima facie* case of discrimination according to age or a hostile work environment claim due to age, those claims must be dismissed.

Retaliation

Although plaintiff does not make explicit claims for discriminatory retaliation, her papers can be read as such and defendant has moved for summary judgment on any such claims.

Retaliation claims are analyzed under the same burden-shifting framework already discussed. **Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 172-73 (2d Cir. 2005)**. To demonstrate a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she participated in a protected activity; (2) the employer was aware of the activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse {*15} employment action. **Id.** at 173.

Although plaintiff does not identify what protected activity she engaged in, presumably she refers to her filing a complaint against plaintiff with the Commission in June 1998. Assuming that to be the case, plaintiff clearly satisfies the first three prongs of the test for a *prima facie* case. As for the last prong, plaintiff has failed to allege any facts that demonstrate a causal connection between plaintiff's filing a complaint and her discharge. n3 As with her other claims, plaintiff has offered little or no affirmative evidence of discrimination and has not offered any evidence to undercut the weight of the negative performance evaluations that defendant has presented.

- - -Footnotes- - -3

n3 Even if plaintiff could demonstrate such a causal connection, defendant's well-documented, increasing displeasure with plaintiff's work performance is a legitimate, non-retaliatory reason for firing her. Defendant was driven to fire plaintiff after many years of increasing dissatisfaction, and the mere fact that her ultimate discharge occurred months after her filing a complaint against the company does not establish retaliation.

- - -End Footnotes- - -

{*16} Plaintiff's retaliation claim must be dismissed.

CONCLUSION

Plaintiff has failed to alleged or produce sufficient evidence to establish a *prima facie* case of discrimination according to national origin, discrimination according to age, or retaliation. Accordingly, defendant's motion for summary judgment is granted and the case is dismissed.

SO ORDERED.

Dated: New York, New York                    U.S.D.J
March 22, 2006
THOMAS P. GRIESA