THE SCOTT FIRM, P.C.
A. Baraka Scott (AS 8751)
55 Washington Street
Suite 750
Brooklyn, New York 11201
(718) 852-7000 (phone)
(718) 852-3302 (facsimile)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------X

EDMUND BRYAN,                                                        ECF CASE
                                                                     07cv7300 (SHS)

                          Plaintiff,

       against

MEMORIAL SLOAN-KETTERING CANCER CENTER,

                          Defendants.

-------------------------------------------------------------------------------X


**PLAINTIFF'S OPPOSITION BRIEF TO DEFENDANT MSKCC'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES**

Celotex Vorp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, (1986).

Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994);

Continental Ore Co. v. Union Carbide & Carbon Co., 370 U.S. 690, 699 (1962)

Ebanks v. The Neiman Marcus Group, Inc., 414 F.Supp. 2d 320, 2006 U.S. Dist. LEXIS 4802 (2006)

Gallo v. Prudential Residential Servs., Ltd. Pshp., 22 F.3d 1219, 1223 (2d Cir. 1994)

Gordon v. New York City Bd. Of Educ., 202 F.3d 636 (2d Cir. 2000)

Harris v. Forklift Systems, Inc., 510 US 17 (1993).

Koeppel v Wachtler, 141 App Div 2d 613, 529 NYS2d 359, 1988 NY App Div LEXIS 6911(1988 2d Dept).

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)

McLee v. Chrysler Corp., 109 F.3d 130 (2d Cir. 1997)

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1973)

United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)

.

**EXHIBIT INDEX**

1. Plaintiff Edmund Bryan's Declaration;

2. Affidavit of Audwin Fogle

3. Statement of Facts in Response to MSKCC's Rule 56.1 Statement

4. Rupert Gillette Deposition

5. Bryan 2003 and 2004 Performance Appraisals

6. MSKCC March 14, 2007, investigation

7. Sheila Donoghue Deposition

8. September 20, 2005 memo to Rupert Gillette

9. August 3, 2006 memo to Rupert Gillette

# INTRODUCTION

Defendant Memorial Sloan-Kettering Cancer Center (hereinafter "Defendant MSKCC"), has filed a motion for summary judgment, alleging that Plaintiff Ednund Bryan (hereinafter "Plaintiff") cannot establish any issues of material fact on the theory that: 1) Plaintiff's claims are barred by *res judicata* and/or *collateral estoppel*; 2) Plaintiff can not establish a *prima facie* case of discrimination; 2) Plaintiff can not show that Defendant MSKCC's national origin and sexual orientation neutral rationales are pretextual; 3) Plaintiff's retaliation claims fail as a matter of law; and 4) Plaintiff was not subject to a hostile work environment.

As will be discussed in detail, Plaintiff can not only demonstrate that there are significant issues of material fact with regard to all of his causes of action, but that upon application of the standard used for determining summary judgment motions, a reasonable inference may by drawn that Defendant MSKCC is guilty of all claims advanced against them by the Plaintiff.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure 56(c), the Court will grant summary judgment if the evidence offered illustrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Where a plaintiff can not establish an essential element of their claim there is no genuine issue as to any material fact because failing to prove one essential element renders all

other facts immaterial. Ebanks v. The Neiman Marcus Group, Inc., 414 F.Supp. 2d 320, 2006 U.S. Dist. LEXIS 4802 (2006) citing Celotex Vorp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)); Gallo v. Prudential Residential Servs., Ltd. Pshp., 22 F.3d 1219, 1223 (2d Cir. 1994). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994); see also Continental Ore Co. v. Union Carbide & Carbon Co., 370 U.S. 690, 699 (1962) (plaintiff "should be given the full benefit of [its] proof without tightly compartmentalizing the various factual components and wiping the slate clean after the scrutiny of each.")

## II. TITLE VII STANDARD OF REVIEW

Title VII employment discrimination matters are analyzed under a "burden-shifting" framework. Ebanks, citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1973). The Plaintiff must establish its *prima facie* case

of discrimination in terms and conditions of employment by showing: 1) membership in a protected class; 2) satisfactory performance of duties; 3) they are subject of an adverse employment action; and 4) that adverse action occurred in circumstances giving rise to inference of discrimination in that class. Ebanks, citing McLee v. Chrysler Corp., 109 F.3d 130 (2d Cir. 1997). Adverse employment action exists if plaintiff experiences a materially adverse change in the terms and conditions of employment. Ebanks, citing Galabya v. New York City Bd. Of Educ., 202 F.3d 636 (2d Cir. 2000). Termination of employment has been held to be a materially adverse change in the terms of employment.

Upon establishment of a *prima facie* case by the plaintiff, the defendant must proffer a legitimate, non-discriminatory reason for the termination. Ebanks, citing Dawson v. Bumble & Bumble, 398 F.3d 211 (2d Cir. 2005). Thereafter, the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reason for termination is pretextual. Ebanks, citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742 (1993).

For retaliation claims the burden-shifting paradigm holds with the *prima facie* elements being: 1) engagement in protected Title VII activity; 2) employer's awareness of plaintiff's acknowledgement in protected activity; 3) adverse employment action against plaintiff; and 4) a connection between the protected activity and adverse action. Ebanks, citing Gordon v. New York City Bd. Of Educ., 202 F.3d 636 (2d Cir. 2000).

### III. RESPONSE TO DEFENDANT'S FACTUAL BACKGROUND

Plaintiff submits his following response to Defendant MSKCC's "Rule 56.1 Statement" (Exhibit 3) submitted with its motion for summary judgment. Numerous disputes of fact exist, as shown in the paragraph-by-paragraph response submitted in conjunction with this Memorandum in Opposition to Defendant MSKCC's Motion for Summary Judgment, and is hereby incorporated in its entirety.

Defendant MSKCC has also included an approximately eight-page Statement of Facts in their Memorandum in Support of Motion for Summary Judgment. Plaintiff's Declaration of Edmund Bryant (Exhibit 1) and Affudavit of Audwin Fogle (Exhibit 2) are submitted in response and opposition to Defendant MSKCC's Motion and are hereby incorporated in their entirety.

### IV. PLAINTIFF'S CLAIMS SURVIVE THE THEORIES OF *RES JUDICATA* AND/OR *COLLATERAL ESTOPPEL*

MSKCC argues for the procedural dismissal of Plaintiff's claims of retaliation and sexual orientation discrimination even though the specific charges were not heard by the New York City Human Rights Commission (NYCHRC).

Memorial, by this *res judicata* application attempts to create a permanent license to violate Plaintiff's state and federal rights by arguing that a favorable decision on their part in a prior proceeding renders all subsequent, offensive workplace behavior

7

permissible.  The legal principle of *res judicata* does not permit a defendant who has been acquitted of speeding in one instance to drive at fifteen miles over the speed limit for the rest of their life.  Plaintiff's rights to a workplace free of hostility and verbal abuse were not stripped by an NYCHRC ruling.  Wholly and totally new acts of discrimination are at issue in the case at bar and a finder of fact may reasonably conclude that Memorial has discriminated against Plaintiff on these grounds.

Memorial also relies on *collateral estoppel* as a principle to dismiss Plaintiff's claims of discrimination and retaliation.  Memorial relies on findings of fact as interpreted by the NYCHRC that were applied to a different group of facts to wit: Plaintiff is "unpromotable" and thus can not be retaliated against.  Failure to promote is only one rubric of Plaintiff's retaliation claims which also alleges offensive comments and disparate treatment.  The nature of NYCHRC finding also should be viewed as static in the context of new allegations of wrongdoing.

Furthermore, facts and events that occurred prior to the NYCHRC hearing may still be considered in determining whether a hostile work environment exists for the Plaintiff.  The continuation of inappropriate and unwanted behavior in the face of formal governmental review could be considered by the Court and ultimately a trier of fact, in determining whether the claims of corrective measures by the Defendant are in fact effective and actually sincere.

## V. <u>PLAINTIFF HAS MADE A PRIMA FACIE CASE OF DISCRIMINATION UNDER TITLE VII</u>

Plaintiff meets all of the elements of a *prima facie* case of Title VII employment discrimination in that: 1) as he is a Jamaican male who has been stigmatized in his work place as being homosexual, he is member of two protected classes related to his national origin as a Jamaican and his perceived sexual orientation as a homosexual; 2) his objective evaluations prove that he was performing her duties; 3) he continues to experience adverse employment actions when he is denied promotion and is exposed to offensive language directed at his national origin and perceived sexual orientation; and 4) the continued offensive language and action in the work place after complaints to MSKCC management and government agencies give a strong inference that the adverse action was based upon his membership in protected classes.

Plaintiff's membership in the protected classes of national origin has not been contested by Defendant MSKCC while Plaintiff's membership in a protected class based on his perceived sexual orientation is contested.

Plaintiff's immediate supervisor, Rupert Gillette, has told Plaintiff's co-workers that the Plaintiff and another male employee would play a game and touch each other in their groin areas. (See Fogle Affidavit at Paragraph 5) During his deposition, Mr. Rupert Gillette denied ever discussing the Plaintiff's sexual orientation. (See Gillette Deposition Page 49 Line 5 to Page 50 Line 4)

MSKCC concedes that Plaintiff is a technically sound and proficient Central Processing Technician. Plaintiff has also trained many co-workers in the dispatch of their duties some of which have been promoted ahead of him. (See Fogle Affidavit at

9

Paragraph 8) Rupert Gillette has consistently referred MSKCC employees to Edmund Bryan for job training. (See Gillette Deposition Page 24 Line 14 to Page 25 Line 2)

During his tenure as a CPT with the Defendant MSKCC, Plaintiff performed her duties in an exceptional manner. Plaintiff performances are evaluated by his supervisor via a performance appraisal whereby his competency in assignments was evaluated on an annual basis. MSKCC has supported their argument that Plaintiff was not qualified for promotion to supervisory position because his performance appraisals consistently rate Plaintiff low in the areas of communication and teamwork. The performance appraisal evaluations are schizophrenic when examined in light of the fact that the Plaintiff has trained many of his co-workers. The performance appraisals also contradict themselves. In 2003 Plaintiff was advised that he could use a "more approachable demeanor" while in 2004 Plaintiff is commended for communicating in a professional manner. (See appraisals as Exhibit 5) There is no question from the performance appraisals that Plaintiff was technically sound and proficient.

Reviewing the appraisals for the Plaintiff in a light most favorable to him as the non-moving party he was clearly completing tasks within the acceptable and satisfactory ranges as stipulated by his employer.

Plaintiff also completed many objective tests and exams related to the performance of his duties which supports his position that he was a competent CPT. (See Bryan Declaration at Paragraph 28)

Plaintiff was the subject of adverse employment action when he was exposed to unwelcome conduct and speech based upon his national origin and perceived sexual orientation. Plaintiff's supervisor Rupert Gillette also discouraged new employee from

communicating with the Plaintiff and effectively ostracized the Plaintiff by fostering an atmosphere of apprehension among the Plaintiff's co-workers. (See Fogle Affidavit at Paragraph 2) There is no dispute that exposure to offensive comments about Jamaicans and homosexuals and the discouragement of communication with the Plaintiff by a supervisor gave rise to an adverse employment action.

The pervasive and ongoing nature of the events that Plaintiff complains of gives rise to a strong inference that discrimination was the cause therefore.

The particular factors that give strong inference to a discriminatory inference are: 1) Plaintiff's supervisor, Rupert Gillette, who claimed he never discussed Plaintiff's sexual orientation, actually told MSKCC employees under his supervision who work with the Plaintiff that the Plaintiff and another male employee engaged in homosexual type horseplay on the job. (See Fogle Affidavit at Paragraph 5); 2) Rupert Gillette ostracized the Plaintiff, actively isolating the Plaintiff by discouraging new employees from interacting with the Plaintiff (See Fogle Affidavit at Paragraph 2) 3) Defendant MSKCC conducted rubber-stamp investigations into the allegations made by Plaintiff and have restructured their handling of discrimination complaints within the past year. (See MSKCC investigation conducted by Sheila Donoghue dated March 14, 2007 as Exhibit 6) (See Deposition of Sheila Donoghue Page 17 Line 24 to Page 19 Line 23) (See Fogle Deposition at Paragraphs 3, 4 and 10); 4) Rupert Gillette has exhibited long term, unchecked hostility towards Plaintiff. (See Memo to Rupert Gillette from John Meggs as Exhibit 8); and 5) The long term pervasive inappropriate language that has permeated the work place as supervised by MSKCC. (See Defendant MSKCC Memo from John Meggs to Rupert Gillette as Exhibit 9) (See Plaintiff's Declaration as Exhibit 1)

## VI. PLAINTIFF HAS MADE A PRIMA FACIE CASE OF HOSTILE WORK ENVIRONMENT UNDER TITLE VII

Plaintiff can prove its *prima facie* case of a hostile work environment because: 1) he is the member of a protected class as a Jamaican and as a perceived homosexual; 2) Plaintiff is exposed to unwelcome conduct and comments when his supervisor and co-workers joke about his national origin and sexual orientation and when his supervisor tells his co-workers that he engages in homosexual horseplay and when his supervisor tells his co-workers not to associate with him; 3) the conduct and speech is so pervasive and severe that Plaintiff has sought psychiatric counseling and several of his co-workers have adopted Rupert Gillette's decision to isolate the Plaintiff; and 4) MSKCC supervisors have engaged in the unwanted conduct and speech and have not effectively corrected the actions of their employers.  Harris v. Forklift Systems, Inc., 510 US 17 (1993).

Plaintiff has raised several issues of material fact that require consideration by a trier of fact.  Even after a hearing before the NYCHRC, the Plaintiff has continued to be subjected to unwelcome comments and conduct.  Plaintiff's immediate supervisor has created and fostered a climate of fear and distrust around the Plaintiff by telling new employees that Plaintiff should not be spoken to and that Plaintiff should be feared. Plaintiff's immediate supervisor has also told MSKCC employees that the Plaintiff engaged in homosexual horseplay in the work place.  MSKCC documentation records the years and extensive nature of the offensive comments that have been sanctioned by management in the person of Rupert Gillette.

The fact that an otherwise supremely skilled technician is viewed as inappropriate for promotion due to personal interaction with co-workers, is evidence of the fact that the conditions of the Plaintiff's employment have been substantially altered and created an abusive work environment.  The fact that Plaintiff's supervisor is isolating the Plaintiff by instructing employees not to associate with the Plaintiff is the causative factor in creating the work place perception that Plaintiff is not suitable for supervisory promotion.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, Defendant MSKCC's motion should be dismissed in its entirety.

Dated:  Brooklyn, New York
        June 20, 2008

Respectfully submitted,

By:_____/S/_____
    A. Baraka Scott (AS8751)
THE SCOTT FIRM, P.C.
Attorneys for Plaintiff
55 Washington Street
Suite 705
Brooklyn, New York 11201
718.852.7000(p)
718.852.3302(f)